Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000334
27-FEB-2018
08:23 AM

NO. CAAP-15-0000334

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

MICHAEL EDWARD MILLER,
Plaintiff-Appellant,
v.
WAIOLI CORPORATION, a Hawaii corporation;
JUDY D. WAKUMOTO, TRUSTEE; RUSSELL AKIO WATARI;
CLARENCE ELI KAONA, STATE OF HAWAII; JOSEPH A. KINOSHITA;
ELIAS DELBERT KAIPO SILVA; ISAAC KEKOA SILVA, J. WILLIAM SANBORN,
TRUSTEE OF THE J. WILLIAM SANBORN TRUST,
Defendants-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 95-0132)

MEMORANDUM OPINION
(By: Nakamura, C.J., Fujise and Chan, JJ.)

In this appeal arising out of a complaint to quiet
title as to an alleged easement, Plaintiff-Appellant Michael
Edward Miller (Miller) appeals from the Final Judgment filed on
March 17, 2015 (Final Judgment), entered by the Circuit Court of
the Fifth Circuit (circuit court).[1]  Final Judgment was entered
in favor of Defendants-Appellees Waioli Corporation (Waioli
Corp.), Judy D. Wakumoto, Trustee, Russell Akio Watari, and
Clarence Eli Kaona (collectively Defendants) and against Miller

---

[1]  The Honorable Kathleen N.A. Watanabe presiding except as noted
below.

on all claims of the Complaint filed May 4, 1995, pursuant to Waioli Corp.'s Finding of Fact, Conclusions of Law, and Order (FOFCOL) filed on October 18, 2013.[2]

I. BACKGROUND

This case involves an easement access to a parcel of land owned by Miller located in Waioli, District of Hanalei, Island and County of Kaua'i, State of Hawai'i. Miller claims the subject property is a portion of Royal Patent Grant No. 1953, Apana 2, which purports to be a conveyance from Kamehameha IV to Naweli. The English translation of Royal Patent Grant No. 1953 indicates that the signature of the King is missing from the document submitted by Miller.

Miller purchased the subject property from James H. Masada by an Agreement of Sale dated April 29, 1980. Upon satisfaction of the Agreement of Sale, James H. Masada deeded the parcel to Miller through a Warranty Deed dated June 1, 1989. The property description, attached as Exhibit A to the Warranty Deed, expressly stated that the property lacked access to any road or public highway. The same day that the Warranty Deed was recorded, Miller executed a Quitclaim Deed conveying title to the property to himself and two others. Through various conveyances since then, title is now held solely by Miller.

Defendants are the owners of the properties that lead up to and adjoin Miller's property over which he seeks an easement, including Waioli Corp. a non-profit corporation established for museum and land preservation purposes, for the benefit of the people of Kaua'i and owner of multiple parcels of land in Waioli Valley.

On May 4, 1995, Miller filed a complaint claiming an easement for access from Kuhio Highway, the closest government road, to his property. The specific route that Miller requested

---

[2] Final Judgment was also entered as to claims between Miller and the State of Hawai'i, Joseph A. Kinoshita, Elias Delbert Kaipo Silva, Isaac Keokoa Silva, and J. William Sanborn, Trustee of the J. William Sanborn Trust. However, the points of error on appeal raised by Miller do not impact the entry of Final Judgment as to these parties.

accesses Kuhio Highway from an existing government road. The route then runs between taro patches owned by private individuals and ends at an irrigation ditch, where the remainder of the route passes through government land. Additionally, there are two other route options for Miller to access his property, both of which Miller was not amenable to. The circuit court was uncertain whether all owners along the other route options were named as Defendants.

On October 9, 1996, the circuit court[3] entered its Order on Motion to Dismiss or For Stay, staying the proceeding until Miller received an easement from the State of Hawai'i. On May 21, 2010, the State of Hawai'i and Miller entered into a settlement agreement in which the State agreed to provide Miller access across State lands surrounding Miller's property in the event that the circuit court granted an easement across the private lands, removing the circuit court stay and allowing the case to proceed to trial.

Miller filed a Motion for Summary Judgment on August 20, 2012, arguing an entitlement to an easement based on Hawaii Revised Statutes (HRS) § 7-1 and by implied grant or reservation. The circuit court denied the Motion for Summary Judgment on October 8, 2012. Miller then filed a Motion for Partial Summary Judgment on February 1, 2013, seeking a determination of the legal issue as to whether his property is entitled to access under HRS § 7-1 without a determination as to the scope of the easement. The circuit court denied the Motion for Partial Summary Judgment and entered its order on March 18, 2013.

The parties proceeded to trial on Miller's claim for entitlement to an easement. Following a jury-waived trial, the circuit court entered its FOFCOL on October 18, 2013 holding that Miller was not entitled to the requested easement for ingress or egress or utilities from Kuhio Highway to his property. Final

---

[3] The Honorable Clifford Nakea presiding.

3

Judgment was entered on March 17, 2015.

II. POINTS OF ERROR

On appeal, Miller appears to primarily contend that the circuit court erred when it held that Miller was not entitled to his requested easement for ingress and egress or utilities from Kuhio Highway to Miller's property pursuant to HRS § 7-1 or based on an implied grant of easement. Miller challenges the following conclusions of law issued by the circuit court:

> 1. Plaintiff failed to prove by a preponderance of the evidence that Miller's lot and the lands over which Plaintiff seeks an easement were owned by common owners.

> 2. Plaintiff failed to prove by a preponderance of the evidence that he is the owner of the Miller lot because the signature of the King is missing from the Royal Patent Grant No. 1953 and therefore, there may not be a chain of paper title to Plaintiff.

> 3. The fact that the Miller lot and the lands over which Plaintiff seeks an easement may have been part of the public domain does not confer a right of way by necessity over Defendants' property.

> 4. Plaintiff is not entitled to an easement over Defendants Hideo Watari's and Russell Watari's Land Court property.

> 5. Plaintiff waived his right to an easement when he took title to the Miller lot knowing that it did not access [sic] to a government road.

> 6. The Miller lot is not a kuleana and therefore not entitle [sic] to an easement under HRS § 7-1.

Additionally, Miller challenges the following findings of fact issued by the circuit court:

> 37. The route that Plaintiff is requesting is the shortest but the other options are not more difficult or expensive or less intrusive on the owners of the servient lots over which an easement may be located.

> . . . .

> 39. Plaintiff has failed to provide a description of the location of the easement requested in Exhibit "A" which describes the location of the requested easement with sufficient detail.

> . . . .

> 41. There is no credible testimony that any other member of the Pa family accessed property past Defendant Watari's property in Waioli Valley for farming or any other purpose.

4

## III. APPLICABLE STANDARDS OF REVIEW

### A. Conclusions of Law

> [The appellate] court reviews the trial court's COLs de novo. A COL is not binding upon an appellate court and is freely reviewable for its correctness. Moreover, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned.

Bhakta v. Cnty. of Maui, 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005) (internal quotation marks, citations, and brackets in original omitted).

### B. Findings of Fact

> [The appellate] court reviews the trial court's FOFs under the clearly erroneous standard. *Ueoka v. Szymanski*, 107 Hawai'i 386, 393, 114 P.3d 892, 899 (2005) (citations omitted).
>
> > An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. An FOF is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.
> >
> > *Bremer v. Weeks,* 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004) (quoting *Beneficial Hawai'i, Inc. v. Kida,* 96 Hawai'i 289, 305, 30 P.3d 895, 911 (2001)).

Bhakta, 109 Hawai'i at 208, 124 P.3d at 953 (brackets in original omitted).

### C. Summary Judgment

The appellate court reviews "the circuit court's grant or denial of summary judgment de novo." Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (quoting Durette v. Aloha Plastic Recycling, Inc., 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004)).

## IV. DISCUSSION

### A. Easement Access under HRS § 7-1

Miller contends that the circuit court erred in its conclusion of law that the subject property is not kuleana and therefore, he is not entitled to an easement under HRS § 7-1. Miller argues that access rights under HRS § 7-1 can be asserted

5

by both kuleana owners and owners of ancient tenancies, including Grants and Royal Patent Grants. He bases his contention on the proposition as set forth in Rogers v. Pedro, 3 Haw. App. 136, 139, 642 P.2d 549, 551-52 (1982), that "[i]n order to establish entitlement to an easement by necessity under HRS § 7-1, it must be clearly established that the landlocked parcel is an ancient tenancy or kuleana whose origin is traceable to the Great Mahele." (Emphasis added).

Waioli Corp. argues that kuleana awards, and not government grants such as those made at the time of the subject parcel, are entitled to a right-of-way under HRS § 7-1. Waioli Corp. explains that Royal Patent Grants and Land Commission Awards of kuleana title are two distinct land holdings as they are different in origin and purpose and therefore should be treated differently.

To understand the distinction between the land holdings, we first examine the transition period from the traditional Hawaiian land tenure system to a more western structure of property ownership. The ancient Hawaiian system of land tenure was explained by the Supreme Court of the Territory of Hawai'i in Territory v. Bishop Trust Co., 41 Haw. 358, 361-62 (Haw. Terr. 1956):

> The unit of land was the *ahupuaa*, usually running from the mountains to the sea. Within the *ahupuaa* were a number of subdivisions, each of which was called an *ili*. This division was for the convenience of the chief, administered by a *konohiki* or agent appointed by the chief. (It is only in the later statutes that the chiefs or landlords are referred to as *konohikis*.) It had no existence separate from that of the *ahupuaa*, except the so-called *ili ku* or independent *ili*, although the independent *ili* paid tribute to the king. There were also *kuleanas*, meaning a tract of land within the larger tract. The term *kuleana* originally referred to a right of property in any business or other matter but afterwards was applied to the land holding of the tenant or *hoaaina* residing in the *ahupuaa*.

In order to transition from the traditional Hawaiian land tenure to a more western system of landholding, the Board of Commissioners to Quiet Land Titles (Land Commission) was established in 1845 to investigate, and settle all land claims of private individuals and was empowered to make Land Commission

Awards. <u>Omerod v. Heirs of Kaheananui</u>, 116 Hawai'i 239, 247, 172 P.3d 983, 991 (2007) (citing <u>Makila Land Co., LLC v. Kapu</u>, 114 Hawai'i 56, 58, 156 P.3d 482, 484 (App. 2006)). "In 1847, the King together with the Privy Council determined that a land mahele, or division, was necessary for the prosperity of the Kingdom." <u>State by Kobayashi v. Zimring</u>, 58 Haw. 106, 112, 566 P.2d 725, 730 (1977). The rules adopted to guide such a division were, in part, "(1) that the King shall retain all his private lands as individual property and (2) that of the remaining lands, one-third was to be set aside for the Government, one-third to the chiefs and konohiki, and one-third for the tenants." <u>Id.</u>

The Great Mahele was started in 1848, with the chiefs and konohiki to be the first to settle their interests by agreement with the King. <u>Id.</u> After the agreements with the chiefs and the konohiki were completed, the remaining lands were divided between the King and the Government. <u>Id.</u>

> All lands of the king, the government, and the *konohiki* were awarded subject to the rights of native tenants. In 1850, the enactment of further principles or the *Kuleana* Act empowered the Land Commission to award fee simple title to native tenants for their plots of land or *kuleana* . . . . The awards were limited to the amount of land actually cultivated, plus small houselots distinct from the cultivated lands. When the Land Commission confirmed an individual's land claim, it issued an award of that land to the claimant. Generally, upon payment of a commutation tax to the government, the minister of the interior conveyed complete title in the form of a royal patent.

<u>Kapu</u>, 114 Hawai'i at 58-59, 156 P.3d at 484-85 (citing Melody Kapilialoha MacKenzie ed., *Native Hawaiian Rights Handbook* 151 (1991)). Royal Patents were issued upon Land Commission Awards by The Minister of Interior upon payment of commutation by the awardee to the government. <u>Zimring</u>, 58 Haw. at 111, 566 P.2d at 730. However, payment of commutation was not required to secure title to kuleana land on the presumption that commutation had already been paid by the konohiki of the ahupuaa. Melody Kapilialoha MacKenzie ed., *Native Hawaiian Rights Handbook* 151 (1991). "The awarding of these *kuleanas* to the native tenants completed the *mahele*, or division, of the lands within the Islands into Crown Lands, Government Lands, Konohiki Lands, and

Kuleana Lands." Jon. J. Chinen, *The Great Mahele: Hawaii's Land Division of 1848* 31 (1958). Subsequently, the Land Commission dissolved in March of 1855. Id. at 13.

Grants and Royal Patent Grants were available to both non-native Hawaiians and native Hawaiians. Grants and Royal Patent Grants were issued by the government "to provide landless citizens with land and to obtain revenues for public expenditures." Zimring, 58 Haw. at 114, 566 P.2d at 731.

> Following the division of the lands into Crown, Government, and Konohiki Lands, from time to time portions of the Government Lands were sold as a means of obtaining revenue to meet the increasing costs of the Government. Purchasers of these lands were issued documents called "Grants" or "Royal Patent Grants." These differed from the Royal Patents issued upon Land Commission Awards. It was not necessary for the recipients of the Royal Patent Grants to obtain an award for their land from the Land Commission.

Jon. J. Chinen, *The Great Mahele: Hawaii's Land Division of 1848* 27 (1958).

Section 7 of the Kuleana Act is the only section that remains and is essentially unchanged in the form of HRS § 7-1, which provides:

> Where the landlords have obtained, or may hereafter obtain, allodial titles to their lands, the people on each of their lands shall not be deprived of the right to take firewood, house-timber, aho cord, thatch, or ki leaf, from the land on which they live, for their own private use, but they shall not have a right to take such articles to sell for profit. The people shall also have a right to drinking water, and running water, and the right of way. The springs of water, running water, and roads shall be free to all, on all lands granted in fee simple; . . .

"The term 'landlord' appears to be a loose translation of 'konohiki' from the Hawaiian language versions of these acts. The word 'konohiki' is defined as '[h]eadman of an ahupua'a land division under the chief." Pub. Access Shoreline Hawaii v. Hawai'i County Planning Comm'n, 79 Hawai'i 425, 438 n.22, 903 P.2d 1246, 1259 n.22 (1995).

"The legislative history of this section shows that it was intended to be the sole and exclusive measure of the rights of the hoaainas as against the Konohikis of the land within which the kuleanas were situated . . ." McBryde Sugar Co., Ltd. v.

Robinson, 55 Haw. 260, 287, 517 P.2d 26, 41 (1973). "[T]he King had expressed concern that 'a little bit of land, even with allodial title, if they (the hoaainas) were cut off from all other privileges, would be of very little value.' Privy Council Minutes (July 13, 1850)." Id. The Legislature expressed concern that "many difficulties and complaints have arisen from the bad feeling existing on account of the konohikis forbidding the tenants on the lands enjoying the benefits that have been by law given them." Oni v. Meek, 2 Haw. 87, 95 (Haw. Kingdom 1858). Therefore, it appears that the purpose of HRS § 7-1 was to protect the rights of the native tenants on the ahupua'a and 'ili of the konohiki, a right that was not available to all owners of Grants carved from government lands.

Hawai'i case law involving access easements awarded pursuant to HRS § 7-1 have considered such rights in regards to Royal Patents issued upon Land Commission Awards of kuleana lands rather than Grants or Royal Patent Grants issued without Land Commission Awards. See Bremer v. Weeks, 104 Hawai'i 43, 85 P.3d 150 (2004)(discussing kuleana right-of-way access pursuant to HRS § 7-1 based on ancient or historical use and necessity); Palama v. Sheehan, 50 Haw. 298, 440 P.2d 95 (1968)(holding that kuleana owners were entitled to right-of-way based on ancient Hawaiian rights or reasonable necessity); Henry v. Ahlo, 9 Haw. 490 (Haw. Rep. 1894) (holding that landlocked kuleana parcel owner was entitled to an easement by necessity over adjacent land to the nearest government road); Rogers, 3 Haw. App. 136, 642 P.2d 549 (confirming access to a landlocked Molokai kuleana described as Apana 1 of Land Commission Award 329-Z and known as Parcel 53 across parcels covered by Grant 474 to the government road); Santos v. Perreira, 2 Haw. App. 387, 390, 633 P.2d 1118, 1122 (1981) (holding that plaintiffs' theory of right-of-way pursuant to HRS § 7-1 was inapplicable because land at issue was not kuleana); Haiku Plantations Ass'n v. Lono, 1 Haw. App. 263, 618 P.2d 312 (1980) (holding that the right of access to a landlocked kuleana parcel does not include the right to park vehicles along

an easement).

In this case, Royal Patent Grant 1953 was not a claim for kuleana land confirmed by the Land Commission, but rather a grant issued by King Kamehameha IV in 1856, one year after the Land Commission had been dissolved. As such, Miller was required to establish that Royal Patent Grant 1953 was the type of grant which was afforded the privileges under HRS § 7-1. Miller failed to provide evidentiary support tracing Royal Patent Grant 1953 to the Great Mahele. See Rogers, 3 Haw. App. at 139, 642 P.2d at 551-52. Miller did not set forth a chain of title to the subject property from the time of its origin to the present that established an entitlement to native tenants' rights. Further, Miller failed to provide any documentation demonstrating that an express reservation was contained in the original grants of the Defendants' properties entitling Miller to an easement by express reservation. See Id.

Based on the foregoing, in consideration of the transition from a traditional land tenure system to a more western structure of property ownership, the purpose and origin of HRS § 7-1, the application of kuleana access rights pursuant to HRS § 7-1 in case law, the laws in effect at the time the Royal Patent Grant was made, and the evidence provided by Miller, we conclude that Miller failed to prove a right-of-way access pursuant to HRS § 7-1 based on necessity or ancient historical use. Accordingly, the circuit court did not err in its holding that Miller was not entitled to the subject easement based on its conclusion that Miller's lot is not kuleana and therefore is not entitled to an easement under HRS § 7-1.

Miller contends that the circuit court erred in denying his Motion for Partial Summary Judgment as to Issue of Entitlement of Easement under HRS § 7-1 filed February 1, 2013, however, since we determine that access rights under HRS § 7-1 do not extend to Miller's property, we affirm the circuit court's order denying Miller's Motion for Partial Summary Judgment entered on March 18, 2013.

### B. Implied Grant of Easement

Miller contends that common ownership and conveyance of his parcel and defendants' parcels created an implied grant of easement by necessity. Miller challenges the circuit court's conclusions of law #1 and #2. In order to establish an easement by necessity based on an implied grant, the claimant must first show "an original unity of ownership of the parcels which later become the dominant and servient parcels." Malulani Group, Ltd. v. Kaupo Ranch, Ltd., 133 Hawai'i 425, 428, 329 P.3d 330, 333 (2014). Thus, an easement cannot exist where there is no common ownership of the two parcels prior to the severance of the landlocked parcel.[4]

In Malulani, this court determined whether the Kingdom of Hawai'i's previous ownership of the subject properties could satisfy the unity of ownership requirement for an implied easement claim. The Malulani court held that the requirement can be satisfied by prior government ownership when the government impliedly granted an easement, "i.e. at the time of severance, the government conveyed the quasi-dominant parcel which would benefit from the claimed easement and retained the quasi-servient parcel over which the implied easement is claimed." Malulani, 133 Hawai'i at 433, 329 P.3d at 338. We apply the rule of Malulani to this case, notwithstanding the fact that the Malulani disposition was entered subsequent to the outcome of the instant proceeding in circuit court. Bank of Hawaii v. Davis Radio Sales & Service, Inc., 6 Haw. App. 469, 477, 727 P.2d 419, 425 (1986) ("When there is a change in the law by court decision between the time of the trial court ruling and the time of appeal, the appellate court applies the law prevailing at the time of the appellate disposition.") (internal quotations omitted). Accordingly, Miller would have to establish that the Kingdom of

---

[4] If the unity of ownership requirement is satisfied, the focus then shifts to the intent of the parties at the time the properties were severed "as shown by all the facts and circumstances under which the conveyance was made." Henmi Apartments, Inc. v. Sawyer, 3 Haw. App. 555, 559, 655 P.2d 881, 885 (1982).

Hawai'i had originally held unity of ownership and at the time it had conveyed the parcel that Miller eventually came to own, it had retained the parcels that the Defendants eventually came to own.

Miller argues that the Government of Hawai'i, as common grantor, conveyed the subject property with an implied grant of an easement. Miller claims that the lands covered by Royal Patent Grant No. 1953 and the lands over which he seeks an easement to his property were lots commonly owned by Kamehameha III and IV and were part of the Government lands of Waioli. Regardless of whether Miller's assertions are accurate, Miller failed to establish that at the time the subject property and the Defendants' properties were severed, the Government conveyed Miller's property, the quasi-dominant property which would benefit from the claimed easement, and retained the Defendants' properties, the quasi-servient property over which the easement is claimed. Without evidence as to the Government's conveyance of the subject property and Defendants' properties, Miller's claim that prior government ownership of properties satisfies the unity of ownership requirement for implying an easement fails. We therefore conclude that the circuit court did not err in its holding that Miller was not entitled to his requested easement based on an implied grant of easement by necessity.

Miller challenges the circuit court's conclusion of law #2. However, his contentions are not supported by any discernible argument and fails to state any alleged error committed by the circuit court. Therefore, this contention is deemed waived. See Kakinami v. Kakinami, 127 Hawai'i 126, 144 n.16, 276 P.3d 695, 713 n.16 (2012) (citing In re Guardianship of Carlsmith, 113 Hawai'i 236, 246, 151 P.3d 717, 727 (2007) (noting that this court may "disregard a particular contention if the appellant makes no discernible argument in support of that position") (internal quotation marks and brackets omitted))

Finally, Miller contends that the circuit court erred in holding that it did not have jurisdiction over land court

12

property as set forth in its conclusion of law stating that "[p]laintiff is not entitled to an easement over Defendant Hideo Watari's and Russell Watari's Land Court property." We do not read the circuit court's conclusion of law #4 as a ruling that it lacked jurisdiction over the Wataris' property. Instead this conclusion of law is consistent with its determination that Miller was not entitled to the specific easement he requested. Miller's challenge to conclusion of law #4 does not entitle him to any relief.

Based on the foregoing, we need not address Miller's remaining issues on appeal.

V. CONCLUSION

For the reasons stated above, we conclude that based on the evidence presented at trial, Miller is not entitled to the specific easement he requests pursuant to HRS § 7-1 or an express or implied grant of easement. Whether Miller is entitled to an alternative route pursuant to other grounds is not an issue on appeal and therefore, we decline to address it. Therefore, the Final Judgment entered on March 17, 2015 is affirmed.

DATED: Honolulu, Hawai'i, February 27, 2018.

On the briefs:

Joe P. Moss,
for Plaintiff-Appellant.

Michael W. Gibson,
Francis P. Hogan and
Clara Park,
(Ashford & Wriston),
for Defendant-Appellee.

Joinder on the answering
brief:

Joseph N. Kobayashi,
for Judy D. Wakumoto, Trustee,
Russell Ako Watari and
Clarence Eli Kaona,
Defendants-Appellees.

Chief Judge

Associate Judge

Associate Judge

13